IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERT L. MIDKIFF,                    *
                                      *
      Plaintiff,                      *
                                      *
vs.                                   *        CIVIL ACTION 11-00053-B
                                      *
MICHAEL J. ASTRUE, Commissioner *
of Social Security,                   *
                                      *
      Defendant.                      *

**ORDER**

Plaintiff Robert L. Midkiff ("Plaintiff" or "Midkiff")
brings this action seeking judicial review of a final decision
of the Commissioner of Social Security denying his claim for
disability insurance benefits and supplemental security income
under Titles II and XVI of the Social Security Act, 42 U.S.C. §§
401 et seq., and 1381 et seq. On November 2, 2011, the parties
consented to have the undersigned conduct any and all
proceedings in this case. (Doc. 17). Thus, this case was
referred to the undersigned to conduct all proceedings and order
the entry of judgment in accordance with 28 U.S.C. § 636(c) and
Fed.R.Civ.P. 73. (Doc. 19). Oral argument was waived. Upon
careful consideration of the administrative record and the
memoranda of the parties, it is **ORDERED** that the decision of the
Commissioner be **REVERSED** and **REMANDED**.

1

## I.  <u>Procedural History</u>

Plaintiff, on November 15, 2007, protectively filed applications for disability insurance benefits and supplemental security income, wherein he alleges that he has been disabled since April 30, 2004, due to back injury, central canal stenosis, and a narrowing/ bulging disc.  (Tr. 62-65, 74, 170). Plaintiff's earnings record shows that he has sufficient quarters of coverage to remain insured through December 31, 2009 (his "date last insured"), and that he was insured through that date.  (<u>Id.</u> 159-61). His applications were denied at the initial stage and upon reconsideration.  (<u>Id.</u> at 66-77).

Plaintiff filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Tr. 78-83).  On December 9, 2009, Administrative Law Judge Joseph T. Scruton ("the ALJ") held an administrative hearing, which was attended by Plaintiff, his representative, and vocational expert Sue Berthaume.  (<u>Id.</u> at 27-61).  On February 3, 2010, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (<u>Id.</u> at 9-26). Plaintiff's request for review was denied by the Appeals Council ("AC") on December 6, 2010.  (<u>Id.</u> at 1-5).  The ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981.  (<u>Id.</u>)  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   <u>Issues on Appeal</u>

A.   Whether the ALJ failed to assign proper weight to the opinions of Plaintiff's treating physician?

B.   Whether the ALJ's RFC determination was supported by the record?

C.   Whether the ALJ erred by failing to fully develop the record?

## III. <u>Factual Background</u>

Plaintiff was born on February 13, 1969, and was age forty (40) at the time of the administrative hearing.  (Tr. 130, 133, 170).  Plaintiff testified that he has an 8th grade education and last worked as a welder. (<u>Id.</u> at 33).  He has past relevant work ("PRW") as a welder/fitter, insulator, roofer, and cashier.  (<u>Id.</u> at 144, 176, 183).

Plaintiff testified that he injured his back in 2003 while on the job[1]. (<u>Id.</u> at 34). According to Plaintiff, he last worked in April 2004 because of constant pain in his lower back and because his right leg "gives out." (<u>Id.</u> at 34, 36, 175). Plaintiff also testified that he has had at least three seizures but he did not seek any medical treatment for two of them. He further testified that he takes Soma and Hydrocodone for his back. Plaintiff indicated that both medications afford him some relief; however, they make him drowsy. Plaintiff also testified

---

[1] Plaintiff reported that he filed a Workman's Compensation claim and received a settlement. (<u>Id.</u> at 34)

3

that he takes Xanax for anxiety, but he does not see a therapist or mental health counselor. (Id. at 34-36). According to Plaintiff, when he uses his medication, his pain level is 7 out of 10, but without his medication, his pain "verges on a nine." (Id. at 37).

Plaintiff testified that he is able to care for himself, and do some light housekeeping, such as laundry, dishwashing and cooking, but that he is unable to vacuum or sweep. (Id. at 39). Plaintiff also testified that he is able to take out of town trips by car, but he requires breaks because of his back pain. (Id. at 49). Plaintiff also reported that his orthopedic doctor advised against surgery on his back and while Dr. Prasad has advised him to get a back brace to reduce his pain by 25%, he has not been able to afford the brace. Plaintiff admitted that he had not conducted any research regarding organizations or resources that might help him to purchase the brace. (Id. at 43).

## IV.  **Analysis**

### A.   **Standard Of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th

Cir. 1990).[2]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163 (S.D. Ala. 1999).

B.   **<u>Discussion</u>**

An individual who applies for Social Security disability benefits must prove his disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically

---

[2]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

In the case <u>sub</u> <u>judice</u>, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. (Tr. 14). The ALJ concluded that while Plaintiff has the severe impairments of lumbar disc syndrome and a history of seizures, anxiety, and depression, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (<u>Id.</u> at 22). Relying on the testimony of the vocational expert ("VE") and other evidence of record, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to:

> perform the exertional requirements of sedentary work (lift, carry, sit, stand, walk) as defined in 20 C.F.R. 404.1567(a) and 416.967(a). However, the claimant has non-exertional limitations as well in that he can never operate foot controls with his right lower extremity. He is restricted to rarely climbing stairs and ramps, and rarely kneeling, crouching and crawling. He can perform no more than occasional balancing and stooping. He can never climb scaffolds and ladders. He must avoid all exposure to work place hazards, such as unprotected heights, moving mechanical parts, dangerous machinery, and operating a motor vehicle. He can understand, remember and carry out no more than short, simple instructions and some detailed instructions.

(<u>Id.</u> at 16). The ALJ next determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence and

limiting effects of the alleged symptoms were not credible to the extent they are inconsistent with the RFC assessment. (Id.) The ALJ concluded that while Plaintiff cannot perform any of his past work, he is capable of performing jobs that exist in significant numbers in the national economy, such as surveillance systems monitor, unskilled assembler, which includes egg processor, and microfilm document preparer. (Id. at 20-1).

The relevant evidence of record reflects that Plaintiff injured his back while at work on October 20, 2003, while working as a welder. (Tr. 138-51). On March 16, 2004, a MRI of Plaintiff's lumbar spine showed satisfactory alignment and that the intervertebral discs were maintained. No pars defects were noted, and the paraspinous soft tissues were normal. (Id. at 225, 227). Dr. Thomas Purser diagnosed a severe strain/sprain of the lumbosacral spine and recommended that Plaintiff be off work for four to six weeks for physical therapy and to give his back a chance to heal. (Id. at 228).

On April 27, 2004, multiplanar noninfusion imaging of Plaintiff's lumbar spine revealed as follows: "[b]road base disc bulge with an asymmetrically prominent right lateral component at L4-5. There is a resultant mild narrowing of the central canal and bilateral L4 foramina but no evidence of L4 root impingement. Small central disc bulge at L5-S1 with an

associated outer annular tear. There is minor narrowing of the central canal and mild L5 foraminal narrowing but no evidence of root impingement." (Id. at 230). Radiological imaging from June 23, 2004, was compared to Plaintiff's April 27, 2004 tests and showed no interval changes since the prior exam. (Id. at 141, 226, 229).

Over a year later, on June 16, 2005, Plaintiff underwent another MRI of the lumbar spine. The findings were as follows: desiccation of disc material L5-S1 with small focal annual tear and 2 mm posterior central bulging of disc material with slight flattening of the anterior thecal sac margin at L5-S1. (Id. at 141-2; 233). Dr. Purser's treatment notes dated May 24, 2006 reflect that an MRI of Plaintiff's lumbosacral spine showed a symmetrical bulge with prominent right lateral component of the L4-5 with narrowed central canal with no evidence of L4 root impingement. (Id. at 140).

Plaintiff presented to the emergency department of Highland Community Hospital on August 1, 2007. He complained of a seizure and was ambulatory upon arrival. The notes reflect that Plaintiff refused an ambulance ride to the hospital. Upon intake exam, Plaintiff was in no acute distress, was calm and cooperative, and was awake, alert, and oriented times three; however, Plaintiff left prior to medical screening by a doctor. (Id. 237-9).

Ahmad A. Haidar, M.D. (hereinafter "Dr. Haidar"), interviewed and examined Plaintiff at the request of the Agency on February 27, 2008. (Id. at 241-5). Plaintiff reported that he is in daily pain after a fall from work in 2003. Dr. Haidar's notes reflect that Plaintiff was not on any medications; however, he reported that his medications are the only thing which eases his pain. On exam, Dr. Haidar found that Plaintiff had normal range of motion at the hips, knees, and ankles with normal dorsi and plantar flexion. Straight leg raise tests were negative bilaterally, and Plaintiff was able to walk on toes and heels, squat, and bend forward with fingertips approximately eight inches from the floor.  Dr. Haidar diagnosed Plaintiff with chronic lumbar pain.

Agency consultant Dr. Robert Culpepper completed a Medical Consultant Review on March 8, 2008 and found that Plaintiff's ailments were not severe and that Plaintiff's complaints of pain were not supported by medical findings or clinical medical history. (Id. at 246-7).

Plaintiff was treated by Anil Prasad, M.D. (hereinafter "Dr. Prasad"), at Allied Medical Center for pain management from at least September 27, 2005 to January 27, 2009. (Id. at 248-92; 298-303). His prescription medications included Lorcet 10 mg, Soma 350 mg, and Xanax 2 mg. In 2005, Plaintiff was seen by Dr. Prasad on September 27, October 26, and November 23. The

treatment notes from September 2005 reflect that Plaintiff used a cane to ambulate. (Id. at 280). In 2006, Plaintiff was seen by Dr. Prasad on June 28, August 16, September 13, September 26, October 11, November 8, and December 6, and regularly reported that his pain level was 8 or 9 out of 10. Dr. Prasad's treatment notes dated September 13, 2006 reflect that Plaintiff reported that he went a month without taking his medications due to theft. (Id. at 274). Plaintiff reported in October 2006 that his pain was an 8 on a scale from 1 to 10 and that his leg gave out causing him to fall on his knee. (Id. at 273). In November 2006, Plaintiff was referred to physical therapy; however, the notes reflect that as of December 2006, Plaintiff had not participated in physical therapy. (Id. at 271-2).

Plaintiff presented to Dr. Prasad for monthly appointments in 2007. During that time, Plaintiff reported his pain ranged from 7 to 9 on a scale of 1 to 10. (Id. at 260-70). Dr. Prasad opined in his notes that with medication, Plaintiff was "clinically stable." During his June 12, 2007 visit, Plaintiff reported that he fell down steps and injured his shoulder and back again. (Id. at 265). Treatment notes from September 2007 reflect that Plaintiff's pain medications were working, that he had no side effects, and that he was clinically stable. (Id. at 262).

Plaintiff continued to be treated by Dr. Prasad in 2008, and reported that his pain ranged from a 6 to 9 on a scale of 1 to 10. Dr. Prasad's treatment notes reflect that Plaintiff's pain medications were working and keeping him stable so that he had "some quality of life."(Id. at 259). Plaintiff reported, on March 7, 2008, that his tailbone felt like it was "floating" and that it "pops." (Id. at 258). On a visit in April 2008, Plaintiff indicated that it was becoming harder for him to walk. He requested a MRI, and April 10, 2008, a MRI of Plaintiff's lumbar spine was completed. The scan revealed "normal alignment and normal marrow signal of the lumbar vertebra." Mild degenerative loss of disc signal was seen at the L4-5 level and more pronounced at the L5-S1 level with no significant disc space narrowing was seen. According to the MRI report, there is generalized annular bulge and mild facet and ligamentum flavum hypertrophy at the L4-5 level causing a mild degree of central canal stenosis with a mild to moderate encroachment of the neural foramina bilaterally. However, no definite findings of nerve root impingement were seen. (Id. at 292).

Treatment notes from a subsequent visit in May 2008 reflect that Plaintiff reported it was becoming more difficult for him to get out of a chair without back pain. Dr. Prasad noted that Plaintiff still did not have the back brace that he recommended to ease his back pain and that Plaintiff reported that he was

still shopping for one. (Id. at 256). Plaintiff continued to report constant pain in his right leg on September 18, 2008, and was advised to exercise and eat better. (Id. at 251). Plaintiff denied any new acute symptoms during his October 9, 2008 visit with Dr. Prasad; however, he reported tingling and numbness in both feet. (Id. at 250). Dr. Prasad's treatment notes dated January 27, 2009 reflect that Plaintiff's pain symptoms were all stable, and that his prescription medications were helping him to achieve some quality of life. (Id. at 248).

Plaintiff was treated for lumbar disc disease by Dr. Scott Q. Carver on two (2) occasions in 2009 prior to the administrative hearing.[4] (Tr. 293-7). On March 20, 2009, Dr. Carver reviewed Plaintiff's prior MRI results and noted severe deterioration of the L5-S1 joint space. Dr. Carver also noted atrophy and weakness in Plaintiff's right lower extremity, in addition to bilateral LS paraspinous tenderness. Plaintiff's range of motion was noted as limited. Treatment notes from that date indicate that Dr. Carver sought to taper Plaintiff off of

---

[4] According to the documentation submitted to the AC, Plaintiff was seen by Dr. Jason West, who is a doctor in Dr. Carver's office, on December 8, 2009, because Dr. Carver was not present in the office. Plaintiff was subsequently treated by Dr. Carver, however, on January 5 and March 5, 2010. (Id. at 315-22).

Xanax so that he would only be taking Lortab and Soma. (Id. at 296).

Treatment notes dated April 22, 2009, reflect that Plaintiff indicated that he did not want to go back to Pain Management. On exam, Plaintiff's right straight leg test was positive, and he was continued on Lorcet and Soma, but no Xanax. (Id. at 294).

In a letter dated September 9, 2009, Dr. Carver indicated he was Plaintiff's primary care physician, and opined that: "[Plaintiff] has been unable to work for several years. He has difficulty ambulating, requires medication daily. He will ultimately need some financial assistance or retraining." (Id. at 304). Subsequent thereto, Dr. Carver completed a Lumbar Spine Residual Functional Capacity Questionnaire on November 9, 2009.[5] In it, Dr. Carver opined that Plaintiff can only sit, stand, or walk for less than two hours; that Plaintiff would need employment permitting him to shift positions at will from walking, sitting, or standing; that Plaintiff would need to take unscheduled breaks during an 8-hour workday; that Plaintiff would need occasional use of a cane or assistive device; that

---

[5] There are 2 RFC Questionnaires in the record dated November 9, 2009. However, the first Questionnaire is not complete. (Id. at 305-9). The second Questionnaire is complete; thus, for the purposes of this Order, the Court will consider the second Questionnaire in its analysis. (Id. at 310-14).

Plaintiff could frequently lift and carry 10 pounds or less, occasionally lift and carry 20 pounds, and never lift and carry 50 pounds; that Plaintiff could rarely twist, stoop, crouch/squat, climb stairs or ladders; and that Plaintiff would likely miss more than four days per month from work. (Id. at 310-3).

### 1.   Whether the ALJ failed to assign proper weight to Plaintiff's treating physician?

Plaintiff contends that the RFC established by the ALJ is not supported by substantial evidence. Plaintiff argues that in rejecting the opinions expressed by Dr. Carver, his treating physician, the ALJ failed to articulate the specific evidence which indicates that Plaintiff is able to perform sedentary work and there is no medical opinion, either by an examining or non-examining medical source, which supports the ALJ's RFC determination[6]. The Commissioner responds that the RFC assessment is the exclusive domain of the ALJ, and the regulations do not require the ALJ to base his RFC finding on any particular medical opinion.   The Commissioner further contends that the notes from the treating and examining physicians provide ample

---

[6] Because the undersigned finds that the ALJ had good cause for rejecting some of the opinions expressed by Plaintiff's treating physician, the Court need not address Plaintiff's contention that a treating physician's opinions must be accepted by true if the ALJ did not have good cause for rejecting them.

evidence upon which the ALJ could rely in finding that Plaintiff is capable of a limited range of sedentary work.

As noted supra, the ALJ determined that Plaintiff's retains the residual functional capacity ("RFC") to:

> perform the exertional requirements of sedentary work (lift, carry, sit, stand, walk) as defined in 20 C.F.R. 404.1567(a) and 416.967(a). However, the claimant has non-exertional limitations as well in that he can never operate foot controls with his right lower extremity. He is restricted to rarely climbing stairs and ramps, and rarely kneeling, crouching and crawling. He can perform no more than occasional balancing and stooping. He can never climb scaffolds and ladders. He must avoid all exposure to work place hazards, such as unprotected heights, moving mechanical parts, dangerous machinery, and operating a motor vehicle. He can understand, remember and carry out no more than short, simple instructions and some detailed instructions.

(Id. at 16).

In reaching this determination, the ALJ gave little weight to the opinions of Dr. Carver, Plaintiff's primary care physician, who opined that Plaintiff could sit and stand/walk less than 2 hours total in an 8-hour working day; would need to shift positions at will; would need to take unscheduled breaks; must use a cane while engaging in occasional standing/walking; could lift up to 10 pounds frequently; could lift up to 20 pounds occasionally; could rarely twist, bend, squat or climb; and would, on average, be absent from work more than four days

per month as a result of his impairments or treatment. (Id. at
310-3).   In according little weight to Dr. Carver's opinions,
the ALJ noted that Dr. Carver's treatment history with Plaintiff
was brief, as the medical records reflect only two appointments,
in March and April 2009.  The ALJ also found that Dr. Carver's
opinions were inconsistent with the medical record as a whole,
that Dr. Carver's opinion that Plaintiff is disabled is an issue
that is reserved for the Commissioner, and that it appears that
Dr. Carver relied heavily on Plaintiff's subjective reports in
reaching his opinions.

     "The ALJ must generally give the opinion of a treating
physician 'substantial or considerable weight' absent a showing
of good cause not to do so." Newton v. Astrue, 297 Fed. Appx.
880, 883 (11th Cir. 2008). See also  Lewis v. Callahan, 125 F.3d
1436, 1440 (11th Cir. 1997) (a treating physician's opinion must
be given substantial weight unless good cause is shown to the
contrary).  The Eleventh Circuit has concluded "good cause"
exists when a treating physician's opinion is not bolstered by
the evidence, is contrary to the evidence, or when the treating
physician's opinion is inconsistent with his or her own medical
records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir.
2004). If an ALJ elects to disregard the medical opinion of a
treating physician, then he or she must clearly articulate the
reasons for so doing. Id. The ALJ may also devalue the opinion

of a treating physician where the opinion is contradicted by objective medical evidence. Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (per curiam), citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (holding that "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion") (citation omitted); Kennedy v. Astrue, 2010 U.S. Dist. LEXIS 39492, *22-23 (S.D. Ala. Apr. 21, 2010) ("[I]t is the ALJ's duty, as finder of fact, to choose between conflicting evidence[,] and he may reject the opinion  of any physician when the evidence supports a finding to the contrary.").

The undersigned finds that the ALJ offered good cause for not according considerable weight to all of the opinions expressed by Dr. Carver.  While Dr. Carver opined that Plaintiff could only stand, sit and walk less than two hours in an eight hour shift, that Plaintiff would need the occasional use of a cane or assistive device, and that he would likely miss more than four (4) days per month from work, these opinions are not supported by the medical records.  The medical records reflect that while Plaintiff was diagnosed with lumbar disc syndrome, repeat MRIs of his lumbar spine did not show any nerve root impingement.  Further, Plaintiff was treated conservatively with medications, and he reported that his medications were working. Additionally, Plaintiff testified that he could care for

himself, that he could do some household chores, and that he took out of town trips in the car but stopped for breaks. Further, when Plaintiff was examined by Dr. Haidar on February 27, 2008, Dr. Haidar found that Plaintiff had normal range of motion at the hips, knees and ankles, that Plaintiff had negative results on the straight leg tests, and that Plaintiff was able to walk on his toes and heel. Given this record evidence, the ALJ had good cause for according less weight to some of the opinions expressed by Dr. Carver, such as his opinion that Plaintiff could sit, stand and walk less than two hours, and that he would be absent from work up to four (4) days a month.

However, Dr. Carver also opined that Plaintiff would need to alternate between sitting and standing, at will, and Plaintiff's history of lumbar pain certainly supports such a restriction; but the RFC established by the ALJ does not include this restriction. Moreover, there is no medical opinion, either by an examining or non-examining medical source, which supports the specific restrictions and limitations imposed by the ALJ. Courts within this Circuit have repeatedly held that where the ALJ rejects a treating physician's RFC assessment, the Commissioner cannot simply replace the treating source's opinion with his own. See Canfield v. Astrue, 2007 U.S. Dist LEXIS 57670 (S.D. Ala. June 19, 2007)(rejection of RFC and pain

evaluation by treating source and reliance on the assessment of a non-examining, reviewing physician was improper); <u>see</u> <u>also</u> <u>Siverio v. Comm'r of Soc. Sec.</u>, 2012 U.S. App. LEXIS 3552 (11th Cir. 2012)(unpublished)(court held that although the ALJ properly rejected the RFC by claimant's treating physician, the ALJ's finding that the claimant could perform medium work was error because it was based on an RFC assessment by a single decisionmaker who is not an acceptable medical source); <u>Smith v.</u> <u>Astrue</u>, 2011 U.S. Dist. LEXIS 146050 (S.D. Ala. Dec. 19, 2011)(ALJ erred in relying on the opinion of a nonexamining physician to find that the claimant could perform light work as opinion of nonexamining physician did not constitute substantial evidence).

Based upon a review of the entire record, the undersigned is constrained to find that the ALJ's RFC determination is not supported by substantial evidence where the ALJ rejected the only functional assessment by a medical provider. This is particularly true where Plaintiff's treating physician opined that Plaintiff would need to alternate at will between sitting and standing, and the treatment records appear to support such a restriction yet the ALJ omitted it from the RFC determination[7].

---

[7] Radiological evidence from April 2004 noted "broad base disc bulge with an asymmetrically prominent right lateral component at L4-5 [with] resultant narrowing of the central (Continued)

Accordingly, the undersigned finds that the ALJ's decision must be reversed and the case remanded for reconsideration of Plaintiff's RFC.

Because this issue is dispositive of this appeal, the Court need not consider Plaintiff's remaining arguments. Robinson v. Massanari, 176 F. Supp. 2d 1278, 1280 & n.2 (S.D. Ala. 2001); cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

## V.   Conclusion

---

canal and bilateral L4 foramina but not evidence of L4 root impingement." (Id. at 230). June 2004 imaging results noted "persistent slight diffuse bulging of the L4-5 intervertebral disc" and "persistent small focal central bulge of the L5-S1 intervertebral disc" (Id. at 226). An MRI in June 2005 found "desiccation of the disc material L5-S1 with small focal annular tear and 2 mm. posterior central bulging of disc material, slightly flattening the anterior thecal sac margin at L5-S1." (Id. at 233). Further radiological testing in April 2008 noted "degenerative disc disease at the L4-5 and more pronounced at the L5-S1 levels with mild degree of central canal stenosis at the L4-5 level. There is a broad-based central disc protrusion at the L5-S1 level ...[, t]here is mild facet arthrosis with some encroachment of the neural foramina at the L5-S1 level and also at the L4-5 level." (Id. at 292). Thus, objective medical evidence of a serious back injury is well-documented in the record and is substantial evidence to support Dr. Carver's opinion that Plaintiff would need to alternate at will between sitting and standing.

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **REVERSED** and **REMANDED.**

**DONE** this **26th** day of **March, 2012.**

                              _____/s/ SONJA F. BIVINS_____
                              UNITED STATES MAGISTRATE JUDGE